2018-21, LLC v. Fredman Bros. Furniture Co., 2018-21, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, May it please the court. This case is focused on a claim construction issue of the term pillow It's It's a situation here where we submit that the board applied the wrong claim construction standard And when we go through the board's final written decision, we see consistently that the board went through the evidence trying to see if the definition or the usage of pillow was excluding nominal spill material and We submit that this court in in Ray Smith and in in Ray power integrations Set out the proper standard The court in those cases said the correct inquiry in giving a claim term its broadest reasonable interpretation in light of the specification is not whether the specification prescribes or precludes some broad reading of the claim term And that's exactly what the PTA did here They went through The intrinsic record which they kind of mixed up at times But they were looking for the 408 patent the specification to exclude out from pillow non loose film and that's not the correct approach the correct approach would have been to try to understand what the plain and ordinary meaning of Pillow is and how that terms used in the specification and the claim in a way that's Not far perhaps from what the board did which is to say It looked at the word pillow. It looked at the spec said We're not really we can't tell very much from the spec except that the one specifically described embodiment the interior Item has its own cover before you put it inside the the the outside cover But it describes that in language that says in some embodiments And so what we are going to actually do is look at What the evidence Extrinsic evidence tells us about maybe not the plane But at least an ordinary meaning and we think that film material that's not loose You know like a you know a foam Structure that you could sleep on Rest your head on anyway without putting a cover if you cared to that that is one reasonable It's reasonable to say that that itself is a pillow even if it doesn't have a cloth on it And your honor, I think you hit on a bunch of different points, right? One is the specification does say in some embodiments pillow 24 includes a cover 54 having a first pound But the board made very clear and this was a dispute at the board that that language wasn't broadening out pillow It didn't it wasn't suggesting Some embodiments can have a pillow with a cover and some embodiments could have a pillow without a cover rather with the board said at appendix 13 through 14 is that The actual spec was amended for this very language And it was trying to differentiate between a cover with one panel Versus a cover with more than one panel and the language that was amended out Basically left the language with one panel and this is on appendix 13 for 13 and 14 The court explained that it doesn't broaden pillow to be only fill material Makes clear, you know Maybe a butt should have been there but makes clear that Applicant intended to broaden cover 54 to include only a single panel cover So there's no discussion in the four-way patent specification of a pillow That doesn't have a cover Every discussion is a pillow with a cover and fill material And so one of ordinary skill in the art would understand from that that we're talking about a very traditional pillow Right pillows include covers and fill material within it. Now if that was the only intrinsic evidence, right? That's the only intrinsic evidence the board recognized, right? But there was other intrinsic evidence that the board misclassified as extrinsic evidence And this was prior art that was cited in the file history I mean Kumar the Federal Circuit back in 2003 made this clear That's intrinsic evidence and that should have been considered as well and here we have a you know We did not consider it at all or just interpreted differently from the way that you I think the answer to that is Yes, and yes, so when it comes to the 134 patent, I didn't realize that was a possibility, right? Well, it was both it was both in one instance The 134 patent was treated as extrinsic evidence, even though it's on the face of the patent So it should have been treated as intrinsic evidence and the 134 patent is actually a patent to the same inventor and This same inventor in that description talks about pillows and that the pillow has a cover and fill material consistently in consistent with the 408 spec The board did analyze that information But of course in the wrong bucket right the board was considering it as extrinsic evidence It talked about it after it talked about definitions So that's one mistake it didn't give it its proper weight that's legal error, right? It should have been included in the intrinsic evidence But the interesting part about that is what the board said When it was going through and just just just to be clear since accepting your view At least by assumption that this is part of intrinsic evidence and this is matter that we can consider on our own So it doesn't really matter if the board Misconsidered it. We need to consider it for its proper effect regardless we would agree that it should be given its proper weight and And put in the proper category of intrinsic evidence But what the board did say about the 134 patent and other bedgear patents that were extrinsic it said And this is it says it indicates that the pillow claimed in those patents the 134 being one of them requires film material and a cover containing film material and This is important because it demonstrates that the board recognized what the 134 patent taught to one of our any skill in the art But because the board was applying the wrong standard it Discarded this reference because it found it to be a non-limiting example of pillow So because it used the word typically or usually in the specification it said That doesn't preclude it and that's not the right analysis It was supposed to be looking to see what one of our in skill in the art at the time This application was filed would have understood a pillow to be and that's consistently in the 408 patent specification and the written description Would have been as well as the 134 patent would have been a pillow that included a cover and film material But to go to your other point your honor the Frey reference Which is one of the references in the ground is also intrinsic evidence in this case and the Frey reference is an has really great language in explaining what a pillow is and at appendix 805 it says Bed pillows are usually constructed of a fabric covering and a filler of either synthetic fiberfill down feathers latex foam Or viscoelastic foam inside the cover creates a pillow Creates a pillow Frye is telling us what creates a pillow is when the foam is put inside the covering of Frye goes on to talk about the pillow 100 is constructed By sewing two pieces of fabric together around the circumference of the fabric allowing an opening for the filling the resulting cover with filling material So Frye the very reference they're relying on is intrinsic evidence and it makes clear a couple different things that there's the pillow and the film material are two different things and They're used exclusively and consistently as two different things that a pillow is created by placing the film material inside the cover and That foam is film material not a pillow now again the board Threw this reference in The extrinsic evidence bucket and that was improper and incorrect But I think what's more egregious here is that the board failed to analyze this piece of information and that goes to the second part Your honor of your your question Which was here the board didn't analyze You know it talked about our arguments about it, but it didn't analyze the Frey reference It didn't analyze those statements. So not only did it not analyze it in the context of intrinsic evidence To determine what one of our a skill in the art would have understood a pillow to be it didn't analyze it at all Now when it's brief Fredman brothers at page 23 insinuates that the board would have discarded all these disclosures and Frye for the same reasons as the one three four pat But the important part is the board never did that The board didn't go through that analysis So what we have is a record in which one of the most important pieces of intrinsic record was left unanalyzed now When we look at what the board did Rely on it relying on the dictionary definition a second definition in In a reference in a dictionary that or a reference submitted by beg gear But a definition that neither party relied on Neither expert testified about and there's no surrounding understanding of what one of our any skill in the art would have understood that definition to me and The definition only says any pillow-shaped blocker support So as the court was going through this what did the court say about this at appendix 15? Says we note that the only definition in the record that relates to film material that is not loose is exhibit 2003's any pillow-shaped block or support and Then the board comments that that which is also consistent with petitioners interpretation, but again the boards going through all the evidence There was other dictionary definitions, and they all require to cover in fill But the board was looking exclusively for non-loose film material to see if somehow pillows have excluded that from ever being considered and that's just Fundamentally the wrong approach. It's wrong as a matter of law and it infected the entire analysis the board provided Now You know again the board can consider extrinsic evidence Absolutely, we don't object to that But the board can't rely on it when it's inconsistent or contradicts the intrinsic record and that's well settled That's bedrock principle and the Federal Circuit has made that clear over and over again so when we look at how the board did this and How it infected the analysis and infected how the board looked at the evidence? There was unfortunate mistakes about which evidence fell in which bucket But it also leads to a certain kind of absurd results one being that the pillow the definition of pillow changes based on the film and That's unusual right a pillow has a meaning to one of our own skill in the art It's the components of and I think you know your honor your your last point was about resting your head That's the function of the pillow right that's what we do with a pillow But it's not what a pillow is and I think there was testimony for sure in the record about there You know Fredman brothers expert said well a puppy could be a pillow because you can rest your head on a puppy I'm not suggesting that's appropriate you can rest your head on a rock you could rest your head on whatever But that doesn't make it a pillow because it serves the function of something we can rest our head on I can rest my head on my arm that doesn't make my arm and pillow a pillow had a well and established and understood meaning The record intrinsic record makes it incredibly clear that it's a pillow that includes a cover and fill The intrinsic record was clear. I don't believe extrinsic evidence needed to be resorted to but even if it is It doesn't it's not all permitted to contradict the engine. You're into your bottle time and perhaps you want to rest Thank you your honor You May please the court Jason Mudd for a pulley Fredman brothers furniture The board correctly found that claim 12 of the four-way patent would have been obvious over fry and view of Shelby The purported invention here was directed to a pillow cover having an opening in one pan or the panel that's covered by both a porous patch and a filter so as to allow for airflow while at the same time preventing the Entry of contaminants such as dirt and oil now importantly bed gear does not dispute that any of these purported inventive features and indeed that all the limitations of claim 12 are taught by fry and view Shelby except for one claim term pillow and Argument for why it does not teach a pillow is based on an improper narrowing claim Construction that seeks to limit the claim term pillow to being just a quote standard pillow having at least its own fabric cover and fill material contained therein bed gears proposed construction is telling because their own construction recites that the claims pillow should be a Standard pillow that has its own fabric cover. So its own construction tacitly admits That it's a standard pillow that would have its own fabric cover and that there could be other Presumably non-standard pillows in bed gears view that would not have their own cover such as solid memory foam So it's very clear that bed gears construction is seeking to read in Limitations into the claim language now importantly the standard that's being applied here is the broadest reasonable interpretation We're not applying Phillips because this IPR was handled before The Patent Office changed its rules to adopt the Phillips standard Now importantly the intrinsic evidence here does not support bed gears construction to seek to inject this requirement of a standard pillow that has its own cover and What this construction is doing as the board noted is it's trying to require the claim language which already recites a pillow cover It's trying to inject a requirement that there are two covers even though the plain claim language only recites a single pillow cover Now as we noted in the briefing Bed gear could have expressly recited in the claims that the pillow comprises its own pillow cover But they didn't do that Edgar could have acted as its own lexicographer if the term pillow had such great importance to the invention They could have defined the term pillow and saying it specifically is limited to a so-called Standard pillow having its own cover, but beggar did not do that Edgar could have also in describing the pillow in the specification always described it as having its own cover, but it did not do that Therefore it's inappropriate to read in a limitation. That's not present in the claim language and Importantly even the specification itself Doesn't describe the pillow as being a quote standard pillow or a conventional pillow and as the board expressly found Bed gears proposed construction was not consistent with the specification So bed gear had primarily relied on figure three Of the 408 patent and the description of it which refers to a pillow 24 Having a cover 54 it's this essentially this cover 54 that bed gear is trying to read into the claim language but importantly what the specification says that column 5 lines 49 to 51 is that in some Embodiments pillow 24 includes a cover 54. So it's saying in some embodiments It has this cover now importantly that sentence continues It says in some embodiments pillow 24 includes a cover 54 having a first panel 56 now in the proceedings below That gear had argued well that that could mean it's just saying in some embodiments the cover 54 has a first panel so as to suggest that there are other embodiments that where the cover 54 has two panels and Importantly the board addressed this issue, and I don't believe bed gear is continuing to urge this issue But but what the board noted is that during prosecution the specification was actually expressly amended to exclude Any embodiment where cover 54 has two panels? So the only cover 54 that's ever described in the patent is a cover 54 that has one panel so That makes clear then that that sentence means that in some embodiments pillow 24 includes a cover 54 There is no embodiments where you have a two paneled cover 54 It's just one cover 54 that's described, and it makes clear that that's present in some embodiments And importantly the board went on to note in its decision that even pillow 24 itself is just an example in the patent So the patent states at column 3 lines 8 to 9 that a pillow such as for example pillow 24 of system 10 So even pillow 24 even if we assumed that every embodiment of pillow 24 was described as having its own cover 54 Even if that were the case it would still be improper to limit the claim pillow to that Because the patent makes clear that pillow 24 itself is just exemplary It's just an embodiment and the board expressly noted that in his decision and Importantly Bedgar's expert testified that the 408 patent can be used with any pillow It's not restricted, and he agreed that pillow 24 is just an example That's described in the specification, and it's black letter law that it's improper to try to read limitations in from embodiments in the specification into the claim language Now turning next to the 134 patent and the Frye reference now counsel for bedgear has argued that the board committed error here by bucketing this Supposedly very important evidence as being extrinsic evidence rather than intrinsic evidence Importantly there's nothing in the board's decision that suggests it was somehow discounting the 134 patent or the Frye reference as Being extrinsic evidence and therefore we're giving it less weight They didn't do that all bedgear can say is that well the headings? Lists the 134 patent and Frye references under a subheading that's titled extrinsic evidence That's that's all that that happened There's nothing in the decision that says We discount this evidence in any event it doesn't matter because the board found that the 134 patent and Frye Actually don't support bedgears construction because what the 134 patent specification says is that The use of a pillow made typically of a fabric cover stuffed with compliant soft material is known in the prior art so the 134 patent itself admits that it is typically a pillow it has a fabric cover with fill material which Demonstrates that the same inventor in a piece of intrinsic evidence a cited reference Had said that typically pillows have their own fabric cover not that they always have them or require The same thing applies for the Frye reference the Frye reference states that pillows are usually Constructed of a fabric covering and fill material again They usually are they are not always constructed in this manner, and they're not required to be constructed in that manner so even if the board somehow Misclassified the 134 patent and Frye as extrinsic evidence, which we don't believe they did But even if they did they didn't purport to discount it and this evidence actually Demonstrates that bedgears construction is improper so if anything if we were to classify it as intrinsic evidence It elevates that the importance of this evidence which demonstrates that that bedgears construction is improper Next the board thoroughly weighed and considered the party's extrinsic evidence And as we noted in the briefing this weighing of evidence by the by the board is entitled to deference As this court confirmed in the SAS opinion applying the US Supreme Court's Tebbit decision The board's weighing of extrinsic evidence and claim construction is reviewed for substantial evidence So here this isn't an opportunity On appeal for bedgear to go in and ask this court to re-weigh the extrinsic evidence the board here has weighed that and there is Certainly more than reasonable evidence that allowed the board to reach its conclusion with regard to the extrinsic evidence starting first with the dictionary definitions now bedgear has raised issue with the fact that a piece of evidence that they themselves submitted a Blocker support they take issue with the board relying on a piece of evidence that they themselves submitted There's there's nothing improper about doing that they certainly invited the board to consider that definition because they provided it To the board whether bedgear argued it or not is irrelevant It's evidence they provided and importantly even amongst these definitions We again see the word usually right usually a fabric cover it is is stuff with soft material for a pillow usually and Importantly the expert testimony here Including the testimony of bedgears own expert. I think is some of the most persuasive evidence the board considered the bedgears expert incredibly testified that Solid memory foam in a cover would be understood to be a pillow, but when you remove that cover It all of a sudden ceases to be a pillow because you've taken the cover off And when asked why why is the memory foam no longer a pillow when you take the cover off you testified? Well, it can absorb moisture and contaminants and this would cause deficiencies Well that that may make it a dirty pillow, but it's still a pillow at that point And as the board expressly found The record quote does not indicate why solid memory foam Even even if it can absorb Undesirable substances fails to benefit from the advantages of cover 12 of the four-way patent or be a block or support And as we noted in the briefing indeed a piece of solid memory foam that did not have its own Fabric cover would benefit even more so from the invention right a cover that has a Porous patch and a filter to keep contaminants from going in a piece of Memory foam it doesn't have its own cover Benefits even more if the memory foam already has its own intrinsic cover inside of the pillow cover in other words two covers It really needs the invention much less Because it's already has an own intrinsic cover So as the board noted that the fact that a piece of solid memory foam can become dirty without its own cover Does not in any way? Demonstrate that it is not a pillow as the board noted The key aspects of the 408 were preventing staining while also allowing cooling and allowing the pillow to be removed and the board concluded this is at appendix 12 to 13 that a All all of those benefits, so there's no reason why that cannot be considered to be a pillow Next I don't believe that you're really addressed it in its opening argument, but in the briefing bed gear had argued that there was Potentially something that the board's decision was not Expressly clear that it was finding that fry taught Solid foam the board's decision is Sufficiently clear on that point because it concludes that its claim construction encompasses Solid foam material and it proceeds to then find that fry teaches that solid foam material Fry discloses the use of viscoelastic foam also known as memory foam And latex foam and as our expert opined this forms a pillow that deforms when a person lays their head on it and rebounds when The person removes their head so the board necessarily expressly found that the fry reference taught Solid foam fill material and satisfied the board's construction There are a couple of other arguments that the bed gears council didn't raise on appeal I don't see a need to address. There was an argument about an APA violation that Supposedly, they were not on sufficient notice regarding the board's ultimate construction of the term pillow We've laid this out in detail in the briefing The the construction of the term pillow was at issue all the way back in the patent owners preliminary response in the institution decision The board made it clear that the claimed pillow did not require its own cover This was heavily litigated throughout the course of the proceeding Bed gear had made arguments about loose fill material not itself Constituting a pillow so bed gear was fully on notice that the construction of the term pillow Was at issue and that there was a dispute over whether there was a dispute regarding solid versus loose fill material And Finally, I'll just note very briefly There was a reference to an appointments clause constitutional challenge We contend bed gear waived this argument by one not presenting it below in the IPR proceedings and second by not providing any substantive argument in its opening brief and instead just purporting to Reserve preserve such a challenge without actually raising it and that is waived pursuant to this court's opinion in Smith Klein Beecham There was a couple points that appellants counsel had raised One was with regard to in Ray Smith and all I can say about in Ray Smith is that? there the specification had repeatedly distinguished between a body and a mandrel and Therefore it was unreasonable to construe a body as encompassing a mandrel There's no such repeated use of the term pillow in a specification that would make this case analogous to in Ray Smith Counsel your red light is on. I think we have your argument Thank you, your honor. We request that the board's decision be affirmed Mr. McKinney has a little rebuttal time Thank you your honor starting with the fry reference having solid foam and We disagree with that and I think I'm sure the panels looked at the decision and it's clear that the board did not make that finding But just restated its claim construction holding But if it did then that means that fry Disclosed the solid foam as film material and not a pillow so the very reference the examiner saying has a pillow is Relying on something that the reference calls something completely different film material consistently calls a film material We believe that's an issue and an error in the decision But but to be honest the decision doesn't go that far. It never says fry has a solid block of foam but now Going back to everything we've heard we never heard. What's the plain and ordinary meaning? We heard usually typically these are somehow now bad words They're actually words that evidence what one of our a skill they are would understand the term to me Usually a pillow includes fabric cover and film. That's the order to plain and ordinary meaning There's a district court from the Northern District of California that we cited to the federal circuit hasn't addressed this issue we submit that when those words are used they are evidence of what the plain and ordinary meaning is and they shouldn't be used against a patent owner as Non-limiting examples and and and this really goes to what in Ray Smith the court said in in Ray Smith It said following the logic that counsel is proposing and the board employed Any description short of an express definition or a disclaimer in the specification? Would result in an adoption of the broadest possible interpretation of a claim term That's that's not the it's a broadest reasonable interpretation in line to the specification And we submit that was not done here. We got the broadest possible. We didn't get the broadest reasonable and And I think just the last point You know to this issue is just that counsel says that a pillow doesn't have to include right because there's no express disclaimer or Limiting out non-loose filler but by that same logic then pillow means nothing Because in the same way it doesn't say it can't it has to have a cover it must have a graded It's defined to have a cover always has a cover. It doesn't say anything about the film material either Right, it just lays out how it's using the term and that's how one of one of one or any skill in the art would Understand how the term is being used by the inventor. We appreciate your time I could say we don't sleep on it We'll consider your arguments in the cases submitted